BARNES, J„
for the Court:
¶ 1. This is an appeal from the order terminating child support owed by S.H. (Howard)[1] entered by the Covington County Chancery Court. On appeal, S.S. (Smith) argues that the chancellor erred in abating child support due from Howard, the father, to her, the mother, for the minor child, Jane. Finding error, we reverse and render.
FACTS
¶ 2. The parties, Smith and Howard, were divorced on May 8, 1995, in Coving-ton County, Mississippi. The minor child was two years old at the time.
¶ 8. On September 10, 2002, Howard was indicted in the Forrest County Circuit Court for sexual battery against the child, Jane, on defined dates in 1999 and 2000. An order passing the cause to the inactive files was entered on July 21, 2005, citing that a material witness was discredited and that Howard was concerned that taking the matter to trial would cause physical and mental damage to Jane. Howard agreed to have no contact with the minor child until the age of majority, and he would not attempt to exercise any visitation rights with the minor child. Jane was twelve years old at the time of the order.
¶ 4. On November 5, 2007, the minor child filed a motion to change her surname from Howard to Smith. The motion was joined by her mother. Howard contested the motion, and a hearing was held on January 23, 2008. At the hearing, Jane testified that it was her idea to have her surname changed and that neither her mother nor anyone else had anything to do with her decision. At the time, Jane was fourteen years old. The motion was granted.
¶ 5. On May 7, 2008, nunc pro tunc to April 17, 2008, the chancery court entered an order terminating child support, stating: “The Court has granted the Mother’s Petition to Change the child’s last name from [Howard] to [Smith] and that the child has not visited with the Father in many years.” The chancery court abated all child support “until said child resumes a father-daughter relationship with her father.”
¶ 6. Although the order states that it was “on motion of [Howard,]” no motion was filed by Howard asking that child support be abated or terminated, and there was no verbal request on Howard’s behalf at the hearing on January 23, 2008. Smith also notes that neither she, Jane, the minor, nor their counsel was placed on notice that the chancery court would consider the motion terminating the child support. The chancery court clerk’s docket does not show that any such motion exists or that a hearing was held prior to the chancery court’s entry of its order.
¶ 7. During the hearing on the change of surname, the indictment and the order of the Forrest County Circuit Court were both placed in evidence, as was the testimony of Jane. There was no evidence that the child’s behavior in any way caused an abandonment of the father/daughter relationship.
*1056 STANDARD OF REVIEW
¶ 8. Howard did not file or submit a brief in this appeal. Usually, such a failure is tantamount to a confession of the appellant’s assignments of error. In N.E. v. L.H., 761 So.2d 956, 962 (¶ 14) (Miss.Ct. App.2000), this Court stated:
[Wlhen matters on appeal touch the welfare of [a] minor child, then regardless of whether a party filed a brief, this Court will “reach the merits of the issues in this appeal, though we proceed unaided by a brief from the appellee.” Allred v. Allred, 735 So.2d 1064 [, 1067] (¶ 9) (Miss.Ct.App.1999); see also Barber v. Barber, 608 So.2d 1338, 1340 (Miss.1992) (holding that despite our ordinary practice of taking issues as confessed when a party fails to file a brief; in matters of child custody and support, practice is to make a special effort to review the record and the merits of the issues raised).
¶ 9. The appellate court “employs a limited standard of review when reviewing a chancellor’s decision.” Dep’t of Human Servs. v. Marshall, 859 So.2d 387, 389 (¶ 3) (Miss.2003) (citing Miss. Dep’t of Human Servs. v. Shelby, 802 So.2d 89, 92 (¶ 11) (Miss.2001)). “We will not disturb a chancellor’s findings unless the court was manifestly wrong, abused its discretion or applied an erroneous legal standard.” Id. (citing Sandlin v. Sandlin, 699 So.2d 1198, 1203 (Miss.1997)).
DISCUSSION
¶ 10. In Caldwell v. Caldwell, 579 So.2d 543 (Miss.1991), the Mississippi Supreme Court visited the circumstances under which a minor could forfeit the right to child support. In Caldwell, the court stated that a child with a strained relationship with the noncustodial parent should not be in danger of having the support payments reduced or terminated. “The amount of money that the noncustodial parent is required to pay for the support of his minor children should not be determined by the amount of love the children show toward that parent.” Id. at 548. (citing Holston v. Holston, 58 Md.App. 308, 473 A.2d 459, 463 (1984) (superseded by statute)). The supreme court also found that the actions to forfeit support must be “clear and extreme.” Marshall, 859 So.2d at 389-90 (¶ 4) (citing Caldwell, 579 So.2d at 548).
¶ 11. At the hearing on the change of name, Jane testified that she had not talked with her father and did not want to. She testified that she wanted “no contact with him whatsoever” and had “no desire to see him at all.” She also testified that she did not love her father and did not want to have anything to do with him. Although Howard was never convicted of the sexual battery of his daughter, her response does not seem to be so extreme as to warrant termination of Howard’s obligation for child support. The chancery court’s order placing the burden of resuming the father-daughter relationship on Jane is in direct conflict with the Forrest County Circuit Court’s order and Howard’s prior agreement made in the circuit court proceedings.
¶ 12. In the present case, the lack of visitation or contact by the father comes from the court order entered by the Forrest County Circuit Court, not any action taken by Jane. In the order passing the sexual charge to the inactive files, Howard agreed “to having no contact with the Complainant until such time as she reaches the age of majority....” Under the order, Howard was not to attempt to have any physical contact with Jane while she was under the age of twenty-one and not to exercise any visitation right with her that he might have under the judgment or decree of divorce from the Covington County Chancery Court. The circuit *1057 court’s order included contact by telephone, letter, e-mail, writing, or any other written means.
¶ 13. In the post-trial motion for a new trial from the order terminating child support, Smith raised the doctrine of “clean hands.” At the time of the chancery court’s order terminating child support, Howard “owed over $50,000 in child support and related expenses.” Under this doctrine, anyone coming to a court of equity must do equity as a condition of recovery. Galloway v. Inglis, 138 Miss. 350, 359, 103 So. 147, 149 (1925). In Andres v. Andres, 22 So.3d 314, 320 (¶ 25) (Miss.Ct.App.2009), this Court stated:
The doctrine of clean-hands provides that “he who comes into equity must come with clean hands.” Cook v. Whiddon, 866 So.2d 494, 498 (¶ 13) (Miss.Ct.App.2004) (citing Thigpen v. Kennedy, 238 So.2d 744, 746 (Miss.1970)). “[T]he clean-hands doctrine prevents a complaining party from obtaining equitable relief in court when he is guilty of willful misconduct in the transaction at issue.” Id. (citing Bailey v. Bailey, So.2d 335, 337 (¶ 6) (Miss.1998)).
Since there was no hearing on the motion to terminate child support and no brief filed by the appellee, it is difficult to state precisely what Howard owed in back child support, but there is every indication in the record that he did not pay child support according to the divorce decree in 1995. Under Andres, the failure of Howard to pay or the chancery court to address the previously owed child support was error. Id. at (¶ 28); see Chapman v. Ward, 3 So.3d 790, 799 (¶29) (Miss.Ct.App.2008); Howard v. Howard, 968 So.2d 961, 976 (¶ 37) (Miss.Ct.App.2007).
¶ 14. In a petition to terminate parental rights, filed on September 6, 2007, Smith stated that Howard was ordered to pay $350 in monthly child support after September 1995. The petition stated that Howard was sixty-seven months behind in his payments for a total of $23,450. The petition also stated that Howard had failed to pay court-ordered health insurance in the amount of $15,727.50 and that he had failed to pay medical expenses of $25,570. In his response, Howard denied these claims without explanation. In his response to a citation for contempt of the final judgment of divorce, Howard does agree that he was to pay $350 per month in child support. There is no indication in the record that the chancery court ever considered the petition to terminate parental rights or the citation for contempt of final judgment of divorce.
¶ 15. The order terminating child support entered by the Covington County Chancery Court is not supported by this Court’s review of the record or the existing law. Furthermore, the record does not show that a motion was filed or that Smith was notified prior to the chancery court’s entry of its order. Accordingly, the chancellor’s order denying relief must be reversed and rendered.
¶ 16. THE JUDGMENT OF THE COVINGTON COUNTY CHANCERY COURT IS REVERSED AND RENDERED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE AP-PELLEE.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, GRIFFIS, ISHEE, ROBERTS, CARLTON AND MAXWELL, JJ„ CONCUR.

. Due to the nature of the claims and the effect on a minor child, fictitious names are used throughout.